**Richard L. AMBROSE, Petitioner–Appellant,**

v.

**Michael HOLMES, Respondent–Appellee.**

**No. 03–1861.**

United States Court of Appeals, Seventh Circuit.

Argued May 25, 2004.

Decided Sept. 29, 2004.

Barry Levenstam, Jenner & Block, Chicago, IL, for Petitioner–Appellant.

Huma A. Khan, Chicago, IL, for Respondent–Appellee.

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

### ORDER

Richard L. Ambrose was indicted on four counts of predatory criminal sexual

assault, pursuant to 720 ILCS 5/1214.1(a)(1). The charges stem from his alleged sexual penetration of his five-year-old daughter, J.A., and her five-year-old friend, B.M. The State of Illinois petitioned the Circuit Court of Illinois, Sangamon County, to proceed under the Sexually Dangerous Persons Act (SDPA), 725 ILCS 205 *et seq.*, which provides for the civil involuntary and indeterminate commitment of those adjudged to be sexually dangerous as defined by 725 ILCS 205/1.01. Though proceedings under the SDPA are civil in nature, the charged individual has a right to be represented by counsel as well as to have a jury determine whether he meets the statutory definition of a "sexually dangerous person" beyond a reasonable doubt. 725 ILCS 205/3–4. The civil proceedings operate much like a criminal trial, allowing the State to call witnesses in order to prove the elements set forth in 725 ILCS 205/1.01.

After a jury trial, on May 27, 1999, Ambrose was found to be a sexually dangerous person and on June 1, 1999, he was remanded to the custody of the Illinois Department of Corrections, Adult Division, for "care and treatment." He appealed his commitment to the State of Illinois through several avenues as well as subsequently petitioning for a federal writ of habeas corpus under 28 U.S.C. § 2254. The district court denied Ambrose's writ and concluded that the eleven claims contained therein were either procedurally defaulted or not cognizable on federal review. After denying his petition, the district court granted Ambrose a certificate of appealability (COA) on the issue of whether Ambrose's confinement under the SDPA violates the constitutional requirements mandated in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) and *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). This court then ordered the parties to

address whether Ambrose's claim was procedurally defaulted based on his failure to fairly present it before the Illinois state courts. After oral argument, we also requested that the parties address the effect of *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004), on the issue of exhaustion and fair presentment. Because we find that Ambrose failed to afford the state court a fair opportunity to address the constitutionality of the SDPA, we affirm the district court's denial of his petition.

Under title 28 U.S.C. § 2254, we may not grant a petition for a writ of habeas corpus unless a petitioner has exhausted his state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims." (emphasis in original)). In the context of this appeal, exhaustion occurs when the petitioner has fairly presented his claim to the state courts by arguing not only the federal legal principles but also the operative facts of the claim thereby giving the state courts a "meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737–38 (7th Cir.2001) (quoting *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir.1999)); *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir.2001). Failure to do so will result in procedural default of the claim, which is excusable upon a showing of cause for the failure and resulting prejudice or a showing that a decision not to review the claim will result in a fundamental miscarriage of justice. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir.2002), *cert. denied*, 537 U.S. 1214, 123 S.Ct. 1312, 154 L.Ed.2d 1065 (2003).

In *Baldwin*, the Court found that a petitioner failed to fairly present his "appellate

ineffective assistance of counsel claim" when he failed to assert that appellate counsel's errors implicated federal law. The Court held that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case that does so." 541 U.S. at ——, 124 S.Ct. at 1351. The Court further reasoned that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*

Prior to *Baldwin*, this court asked the following questions when determining whether a petitioner has "fairly presented" his federal claim to the state court: (1) whether the petitioner relied on federal cases employing a constitutional analysis; (2) whether petitioner relied on state cases which apply constitutional standards parallel to those found in federal case law; (3) whether the petitioner asserted his claim in terms specific enough to alert the court to the constitutional right at issue; or (4) whether the petitioner alleged a pattern of facts that "is well within the mainstream of constitutional litigation." *Verdin v.*

*O'Leary,* 972 F.2d 1467, 1473–74 (7th Cir. 1992). While we have reasoned that the fair presentment analysis should avoid "hypertechnicality," *id.* at 1474, we also reasoned that a "passing reference" to a constitutional issue is insufficient, *Chambers,* 264 F.3d at 738. The ultimate focus is whether the "appropriate state court (including a state supreme court with powers of discretionary review)," was properly alerted to "the federal nature of the claim." *Baldwin,* 541 U.S. at ——, 124 S.Ct. at 1349.

Before this court, and before the district court, Ambrose argues that the SDPA is unconstitutional under the standards set forth in *Hendricks* and *Crane* because it fails to require a jury to expressly find a lack of volitional control on the part of the charged individual.[1] The issue in this appeal is whether he properly presented this argument to the state courts below. Under the SDPA's definition of "sexually dangerous," a jury must determine whether the charged individual is:

suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and [has] demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children.

---

1. In *People v. Masterson,* 207 Ill.2d 305, 278 Ill.Dec. 351, 798 N.E.2d 735 (2003), the Supreme Court of Illinois ruled that while the current version of the SDPA is constitutional under *Hendricks,* in order to comply with *Crane,* 725 ILCS 205/1.01 of the SDPA would now incorporate the Sexually Violent Persons Act's (SVPA) definition of "mental disorder" contained in 725 ILCS 207/5(b). *Id.* at 749. Therefore, "mental disorder" under the SDPA would be defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in the commission of sex offenses and results

in serious difficulty controlling sexual behavior." *Id.* The Illinois Supreme Court further clarified that for a person to be committed under the SDPA "a person must present a danger to offend in the future," requiring "an explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." *Id.* The *Masterson* Court then remanded the case for a new hearing. Because we find that Ambrose did not fairly present his claim, we state no opinion on Ambrose's substantive claim.

SDPA, 725 ILCS 205/1.01. After the State files a petition to proceed under the SDPA, the trial court is required to appoint two psychiatrists to examine the charged individual. If the petition is granted, the psychiatrists will generally testify before the jury concerning their diagnosis, i.e., if they found that charged individual suffers from a "mental disorder" and whether the person demonstrates a criminal propensity to reoffend.

On October 15, 1990, Ambrose initiated his direct appeal, alleging to the Illinois trial court that the State "failed to present any competent evidence to the jury that the Defendant had a mental disorder for at least a year immediately prior to the filing of the petition" and that "the trial judge erred in admitting hearsay testimony under 725 ILCS 5/115–10 because the State failed to satisfy the burden of proving sufficient safeguards of reliability." One of Ambrose's main contentions on direct appeal was that the psychiatrists should not have been permitted to consider and discuss his 1991 arrest for molesting his stepdaughter as well as the 1998 investigations for molestation as a basis for their decision to diagnose him as a pedophile with a propensity to commit acts of sexual assault on minors. The trial court rejected Ambrose's arguments and the Illinois Appellate Court affirmed. Ambrose did not appeal to the Illinois Supreme Court.

On May 29, 2000, Ambrose filed a *pro se* petition for relief from judgment under 735 ILCS5/2–1401 alleging that the trial court should not have allowed the testimony of several witnesses, the state failed to meet its burden under the SDPA, the psychiatrists failed to support their testimony with the proper foundation, and that he was not living with J.A. during the time period of one of the alleged sexual assaults. The purpose of a petition under 735 ILCS5/2–1401 "is to bring before the

trial court facts not appearing in the record that, if known at the time the court entered judgment, would have prevented the judgment's entry." *People v. Bramlett*, 347 Ill.App.3d 468, 282 Ill.Dec. 663, 806 N.E.2d 1251, 1255 (2004). After the trial court dismissed Ambrose's § 2–1401 motion, the appellate court granted him leave to file a late notice of appeal and appointed him counsel. Counsel responded by filing a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), arguing that only one of Ambrose's contentions is properly brought under § 2–1401, i.e., his contention that he was not living with his daughter during one of the alleged sexual assaults. However, counsel conceded that Ambrose misstated the dates of the allegation in his argument and therefore the argument was frivolous.

On June 15, 2001, Ambrose filed a *pro se* reply brief to counsel's *Anders* brief in which he argued that "[t]he trial court errored [sic] in dismissing the '1401 Petition' failing the Factfinder process, that the prosecutor knowingly used or allowed it to go uncorrected, the perjured testimony that goes to the substance of the witnesses testimony or facts, which bear on the witnesses, 'credibility' " and that "[t]he evaluation conducted by the two psychiatrists in this case, was not an In–Depth evaluation, asking only hypothetical questions, without evidence to the contrary, to give opinion assuming the answers not to be true, to give the petitioner a opportunity to show the reliability or truthfulness on the given answers, and failed to use the Factfinder process." Ambrose's § 2–1401 petition was denied at all relevant levels in the state court.

Ambrose argues that he fairly presented the issue of the constitutionality of the SDPA in the discussion section of his reply brief. We must disagree. While Ambrose

did cite *Hendricks*, attempt to state its holding, and make general statements that "due process" had been violated, he made these arguments in support of his assertion that the psychiatrists' diagnoses were improper because they were not supported by what he deemed to be competent evidence. Ambrose's reply brief was largely a regurgitation of the arguments he advanced on direct appeal. He attacked the use of hypothetical questions during the direct examination of the doctors as eliciting opinions which he averred lacked "medical certainty." He further stated that if mental health experts are to be permitted to testify concerning future dangerousness, they should be required to conduct "in-depth" examinations. Finally, he asserted that the psychiatrists should not have been allowed to testify without corroborating physical evidence of sexual abuse.

Ambrose's reply brief attacked the general sufficiency of the evidence used to support the psychiatrists' diagnoses. His citation to federal case law does not change the nature of his underlying claim. "Abuse-of-discretion arguments," such as the ones advanced by Ambrose, do not implicate the federal constitution unless articulated in terms specific enough to raise their constitutional basis. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."). Furthermore, Ambrose's general reference to "due process" without more is insufficient to fairly present his constitutional claim. *See Verdin*, 972 F.2d at 1475. The very fact that this argument was only raised in his reply brief and not

in his main brief in support of his § 2–1401 petition also lends support to our conclusion. Finally, we are also persuaded by the fact that Ambrose later filed a "Motion for Constitutional Challenge of the Sexually Dangerous Persons Act" in state court which makes the precise argument certified on appeal. In an effort to allow the state court to rule on this motion, the district court stayed its determination of Ambrose's federal habeas petition pending the state court's disposition of that motion. However, Ambrose voluntarily dismissed the motion in state court prior to the state's adjudication of the issue. We must conclude that Illinois state courts were not alerted to the claim Ambrose is attempting to advance before us.[2] Therefore, Ambrose's claim has been procedurally defaulted. We therefore will not reach the merits of the issue certified on appeal.[3]

### CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

**2.** Ambrose also filed a state habeas action, however, he does not argue that he fairly presented his current argument in that petition and our review of the filing supports this view.

**3.** Ambrose has not argued cause or prejudice for his failure to fairly present his claim to the state courts.